EXHIBIT 15

EXHIBIT 15

JUDGE WILLIAM L. DIXON
Noted for: March 28, 2024
Without Oral Argument

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| NICOLE YOUNT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIAMOND PARKING, INC., a Washington for profit corporation; DIAMOND PARKING SERVICES, LLC, a Washington limited liability company; and DOES 1-20,<br><br>Defendants. | No. 23-2-19309-1 SEA<br><br>DECLARATION OF TIMOTHY W. EMERY IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

I, Timothy W. Emery, declare as follows:

1.  I am the attorney of record for Plaintiff Nicole Yount ("Plaintiff").

2.  I have personal knowledge of the matters set forth herein and if called to do so, I could and would testify competently under oath.

3.  I submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

**Counsel Qualifications**

4.  I have been licensed to practice law in the State of Washington since 2003 and the State of Utah since 2009.

5.  I am admitted to both the state and federal courts of Washington State.

6.  I have extensive experience litigating and managing the litigation of class action

matters in the state and federal courts of Washington, Utah, and California.

7. I am a member of Emery Reddy, PLLC, which was formed in 2005.

8. Emery Reddy is a litigation firm focused on protecting Washington workers' rights.

9. Emery Reddy has successfully represented thousands of clients and amassed numerous awards and recognition for its skilled representation of Washington workers.

10. Prior to serving Washington workers, I was regulatory and litigation defense counsel for nationwide companies, including GMAC Mortgage Corp, Credit.com, and Creditrepair.com.

11. I spent nearly a decade as General Counsel to H.I.G. Capital, LLC portfolio entities, and was responsible for managing litigation in the consumer and credit space, including lawsuits filed for alleged violations of the CROA, TCPA, TSR, and various state CPAs.

12. In this role, I successfully resolved dozens of national class action matters, including *Ducharme v. John C. Heath Attorney at Law, PLLC*, No. 3:10-cv-02763 (N.D. Cal.), which reinterpreted the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j, permitting credit repair organizations to engage in periodic billing procedures.

13. I have also litigated and managed the litigation of hundreds of employment law matters.

14. For example, I was co-lead counsel in *Frisino v. Seattle School District No. 1*, 160 Wn. App. 765 (2011), *cert. denied*, 172 Wn.2d 1013 (2011), a landmark Washington disability discrimination case, which interpreted the state's disability accommodation laws in favor of Washington workers.

15. I have also recently litigated several lawsuits that resulted in successful resolutions for thousands of Washington workers and consumers, including:

- *Abrego Olea v. Vessel WA Operations, LLC*, No. 22-2-06944-9 (King County Super. Ct.) (secured payments to the class for non-compete violations);
- *Carlson v. Pacific Northwest Fondue LLC*, No. 19-2-05401-8 (King County Super. Ct.) (secured payments to the class for missed meals and breaks);

- *Clopp v. Pacific Market Research LLC*, No. 21-2-08738-4 (King County Super. Ct.) (secured payments to the class in a data breach action);
- *Cottington v. Washington Traffic Control., LLC*, No. 22-2-02152-7 (King County Super. Ct.) (secured payments to the class for minimum wage violations);
- *Davis v. Jeff, Pat, Chris LLC*, No. 19-2-33832-6 (King County Super. Ct.) (secured payments to the class for minimum wage violations);
- *Dozier v. Noble Food Group, Inc.*, No. 19-2-01148-29 (Skagit County Super. Ct.) (secured payments to the class for minimum wage violations);
- *Gegax v. Ann / Judith In Home Caregivers of Western Washington, LLC*, No. 22-2-17728-4 (King County Super. Ct.) (secured payments to the class for non-compete violations);
- *Grove v. Cressy Door Company, Inc.*, No. 21-2-09828-9 (King County Super. Ct.) (secured payments to the class for missed meals and breaks and travel time);
- *Heard v. Home Express Delivery Service, LLC*, No. 20-2-07098-0 (King County Super. Ct.) (secured payments to the class for missed overtime wages);
- *Honc v. Pacific Pie, Inc.*, No. 21-2-02653-32 (Spokane County Super. Ct.) (secured payments to the class for minimum wage violations);
- *Jones v. eFinancial, LLC*, No. 22-2-19385-9 (King County Super. Ct.) (secured payments to the class for non-compete violations);
- *Kennedy v. Ginsing, LLC*, No. 20-2-05287-6 (King County Super. Ct.) (secured payments to the class for missed meals and breaks);
- *LaCombe v. USNR, LLC*, No. 23-2-03036-2 (King County Super. Ct.) (secured payments to the class for time-clock rounding violations) (pending final approval);
- *Moliga v. Vessel WA Operations, LLC*, No. 21-2-09027-0 (King County Super. Ct.) (secured payments to the class for missed meals and breaks);
- *Morey v. Aftermath Services, LLC*, No. 2:21-cv-00885 (W.D. Wash.) (secured payments to the class for missed meals and breaks and minimum wage violations);
- *Morrow v. Maverick Washington, LLC*, No. 22-2-03653-2 (King County Super. Ct.) (secured payments to the class for missed meals and breaks and minimum wage violations);
- *Nyannor v. Vessel WA Operations, LLC*, No. 22-2-08233-0 (King County Super. Ct.) (secured payments to the class for violations of the Seattle Secure Scheduling Act);
- *Saraceno-Oliveri v. Solgen Power, LLC*, No. 23-2-09228-7 King County Super. Ct.) (secured payments to the class for non-compete violations) (pending preliminary approval);
- *Schneider v. Assurance IQ, LLC*, No. 22-2-15633-3 (King County Super. Ct.) (secured payments to the class for non-compete violations);

- *Shipman v. Airport Investment Company, Inc.*, No. 19-2-32386-8 (King County Super. Ct.) (secured payments to the class for minimum wage violations);
- *Spencer v. City of Mount Vernon*, No. 22-2-00461-29 (Skagit County Super. Ct.) (secured payments to the class for EPOA violation); and
- *Warren v. Discount Tire, Co. of Washington Inc.*, No. 22-2-10618-8 (Pierce County Super. Ct.) (secured payments to the class for missed meals and breaks and minimum wage violations) (pending preliminary approval).

## Investigation and Discovery

16. Prior to filing this action, my firm thoroughly researched and evaluated the merits of Plaintiff's claims.

17. We reviewed Plaintiff's documents, including her resume, job posting, and application materials.

18. We investigated Defendants' companies and evaluated Defendants' potential defenses and whether the matter should be brought as a class action.

19. After filing this action, I engaged in multiple telephone conversations and email exchanges with Defendants' Counsel regarding the claims and defenses, as well as exploring early settlement.

20. The Parties engaged in formal and informal discovery.

21. Plaintiff propounded interrogatories and requests for production onto Defendants.

22. My firm performed calculations on the class data to assess potential individual and class damages.

## Settlement Negotiations

23. On or around November 17, 2023, the Parties began informal settlement negotiations. The negotiations were ultimately successful. On or around January 3, 2024, the Parties reached an agreement on the material terms of the settlement and executed a CR 2A Agreement. Over the next three months, the Parties engaged in further debate and negotiation, exchanged drafts, and finalized the Settlement Agreement, which was fully executed on February 16, 2024. A true and correct copy of the Class Action Settlement Agreement ("Settlement Agreement") is attached hereto as Exhibit 1.

24. Copies of the proposed Notice of Class Action Settlement ("Notice") and Claim Form are attached hereto as Exhibits 2 and 3, respectively.

25. The proposed settlement in this case was reached through months of arm's-length negotiations between experienced class action counsel.

26. As described more fully above, the Parties engaged in extensive investigation and negotiation.

**Attorneys' Fees, Costs, and Service Award**

27. The requested attorneys' fees and costs of $300,560.75 are 22.2 percent of the Maximum Settlement Fund.

28. The Parties did not discuss the payment of attorneys' fees until after reaching an agreement on the material terms of the settlement.

29. These fees are the product of more than four months and many hours of labor expended by an employment litigation team to: (a) confer with Plaintiff throughout the case; (b) analyze and document Plaintiff's claims; (c) research the case; (d) draft the class action complaint; (e) engage in litigation, including drafting a motion for class certification and responding to Defendants' motion to dismiss; (f) propound discovery requests onto Defendants; (g) perform multiple individual and class damage calculations; (h) participate in complex settlement negotiations over several weeks; (i) prepare the Settlement Agreement, Notice, and Claim Form; (j) negotiate with settlement administration companies to secure the best notice plan and pricing practicable; and (k) draft the motion for preliminary approval.

30. I anticipate incurring additional time, costs, and expenses before our work is done in this case, as is true of the additional services which we will provide to the Class.

31. For example, Emery Reddy will expend additional time to: (a) prepare and review final drafts of the Notice, Claim Form, and settlement website; (b) monitor the claims process and correspond with the Settlement Administrator and Defendants' Counsel regarding the same; (c) respond to Settlement Class member inquiries and any objections; (d) draft and file the motion for final approval and attend the final approval hearing; (e) defend any appeals taken from the

final judgment approving settlement; and (f) ensure that the distribution of settlement proceeds to Settlement Class members is done in a timely manner in accordance with the terms of the settlement.

32. However, we will not seek any additional payment from the Maximum Settlement Fund to cover the future time and costs that will need to be dedicated to the case.

33. Emery Reddy has incurred $370.98 in out-of-pocket costs and expenses on this action, including filing fees and process service expenses.

34. These out-of-pocket costs and expenses were necessary to secure the resolution of this litigation.

35. The Parties agreed that Plaintiff Nicole Yount should be appointed as Class Representative. Plaintiff requests that she be given a service award in the amount of $20,000, which Defendants will not oppose.

36. Plaintiff has been committed to this case from the beginning.

37. Plaintiff assisted her counsel in investigating the claims, gathering evidence, preparing the complaint, and understanding the facts.

38. Plaintiff provided evidence to support the claims, stayed in contact with my firm, and was prepared to testify in her deposition and at trial.

39. Additionally, Plaintiff provided input on settlement terms throughout settlement negotiations.

### The Contingent Nature of the Case

40. Class and collective actions are inherently complex and time-consuming.

41. My customary hourly rate for matters such as this is $725 per hour. I also accept matters such as this on a contingency fee basis for 33.33 percent of the gross recovery before trial preparations begin, or 40 percent of the gross recovery after trial preparation has begun, plus costs and expenses, with additional fees to be negotiated for any further representation in the appeals process.

42. These hourly rates and the contingency fees are reasonable and customary in the

Seattle area for complex employment law and class action matters for attorneys with extensive litigation and trial experience.

43. Plaintiffs are frequently unable to pay the hourly fee associated with litigating such matters, necessitating a contingency fee where much of the risk of success is shifted onto plaintiffs' counsel, including recovering case costs advanced.

44. Emery Reddy prosecuted this case on a purely contingent basis.

45. My firm has a contingency fee agreement with the Plaintiff that provides for 33.33 to 40 percent of the gross recovery to be paid as attorneys' fees, plus costs and expenses, with additional fees to be negotiated for any further representation in the appeals process.

46. At various times during the litigation of this class action, this lawsuit has consumed significant amounts of time and attorney resources, which could otherwise have been spent on other fee-generating work.

47. Because we undertook representation of this matter on a contingency-fee basis, we assumed a significant risk or nonpayment or underpayment.

48. We will not be paid any amount of our fees absent prevailing on behalf of Plaintiff and the Class, nor will we recover the significant costs advanced in this litigation.

### Litigation Risks and Future Expenses

49. Litigation is inherently unpredictable and therefore risky.

50. In agreeing to the settlement, Plaintiff and I have considered the risks inherent to litigation and the defenses available to Defendants.

51. In the absence of a settlement, the applicants and employees would have faced significant hurdles to relief, including Defendants' opposition to class certification, disputes regarding the availability of damages for violations of RCW 49.58.110, disputes regarding the legal standards for job postings, challenges to Plaintiff's evidence of Defendants' violative job posting, and challenges to Plaintiff's damages model.

52. Defendants have maintained that its job postings were proper and compliant with RCW 49.58.110.

53. If Defendants were able to succeed on these defenses, the applicants and employees would recover nothing.

54. There is a risk of losing inherent in any jury trial.

55. If Defendants were able to convince a jury Plaintiff's allegations were overstated or unfounded, they could effectively reduce or eliminate the Settlement Class's recoverable damages.

56. Even if the jury agreed Defendants were liable, the jury (or this Court) could reject Plaintiff's assumptions regarding damage calculations, significantly limiting recovery.

57. Plaintiff also considered the risk this Court could deny class certification. If Defendants had succeeded in challenging class certification, it would have left Plaintiff to pursue her individual claims and would have allowed no recovery to approximately 287 other applicants and employees.

58. Defendants vigorously that Plaintiff lacked standing under the Equal Pay and Opportunities Act and that she failed to allege an injury in fact.

59. Other applicants and employees who wanted to sue Defendants would then face the daunting prospect of doing so on their own.

60. If Plaintiff obtained class certification and proved liability and damages, any recovery could have been delayed for years by an appeal, and an appellate court could ultimately reverse any favorable ruling obtained at the trial court.

61. That reality gave rise to judgment collectability questions that presented risks for Plaintiff and her counsel to consider.

62. At the time the Parties agreed to explore early settlement, in or around November 22, 2023, my firm was gathering evidence for class certification, which would have taken extensive time and resources.

63. Moreover, depositions of applicants, employees, and Defendants' owners and managers, expert discovery and depositions, motions for summary judgment, motions regarding proper methods for calculating damages, pretrial preparation, and a lengthy class action trial

would have been likely and result in a depletion of available funds.

64. Even if the Class prevailed against Defendants at trial, Defendants would likely appeal any adverse rulings, thereby delaying relief to Plaintiff and the Class.

65. Although Plaintiff and I believe that the harm and violation of the statute is clear, we believe the uncertainty of these legal issues necessitates early resolution.

66. The settlement ensures substantial and timely relief and recovery for Plaintiff and the Class.

67. Defendants' Counsel and I both have substantial experience prosecuting and defending class actions.

68. Both parties believe they would ultimately prevail; however, litigating the case would be time-consuming, expensive, and, like most all class actions, risky.

69. Based on my experience, I evaluated these various issues, including the strengths and weaknesses of the case, and concluded that the settlement is in the best interest of the Settlement Class.

70. Defendants and their counsel likewise support the settlement.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct. Executed on March 15, 2024 at Seattle, Washington.

By:     */s/ Timothy W. Emery*
         Timothy W. Emery