UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHERINE WRIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HP INC. DBA HP COMPUTING AND PRINTING INC., a foreign profit corporation; HP HEALTH SOLUTIONS INC., a foreign profit corporation; and Does 1-20, as yet unknown Washington entities,<br><br>Defendant. | CASE NO. 2:24-cv-01261-MJP<br><br>ORDER ON MOTION TO REMAND |

This matter comes before the Court on Plaintiff Katherine Wright's Motion to Remand (Dkt. No. 12). Having reviewed the Motion, Defendant HP Inc.'s Response (Dkt. No. 14), the Reply (Dkt. No. 16), and all supporting materials, the Court GRANTS the Motion.

## BACKGROUND

Wright filed this class action in King County Superior Court against Defendants, claiming they violated the pay transparency requirements of Washington's Equal Pay and Opportunities Act (EPOA), RCW 49.58.110. Defendants timely removed the action to this Court. (Dkt. No. 1.) Wright now moves to remand the case, asserting that Defendant's removal was improper. (Dkt. No. 12.) The Court reviews the statutory and factual background.

**A.      Statutory Background**

Washington State passed its first equal pay legislation, the Equal Pay Act, in 1943, and amended it for the first time in 2018, at which time it became known as the EPOA. See RCW 49.12.175; 49.58.005. The Washington Legislature found that "despite existing equal pay laws, there continue[d] to be a gap in wages and advancement opportunities among workers in Washington, especially women." RCW 49.58.005. The law was updated "to address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state." Id.

In 2019, the EPOA was further updated to address discriminatory hiring practices by prohibiting employers "from seeking the wage or salary history of an applicant for employment in certain circumstances," and by requiring "an employer to provide wage and salary information to applicants and employees" upon request, although only "after offering the applicant the position." RCW 49.58.005; see also RCW 49.58.100, -.110.

In 2022, the Legislature again amended the EPOA by modifying RCW 49.58.110 to require employers to proactively disclose compensation information when a position is posted as available. This "allows a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." (Complaint ¶ 5 (quoting H.B. Rep. ESSB

5761, at 2 (Wash. 2022)) (Dkt. No. 1-2).) The Legislature was also concerned that "'[m]any candidates spend hours going through rounds of interviews only to find out they can't live on the offered pay.'" (Id. (quoting S.B. Rep. ESSB 5761, at 3 (Wash. 2022)).)

The EPOA now states, in relevant part, that an employer must "disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant." RCW 49.58.110(1). It is this provision that Wright claims Defendants violated.

**B.     Factual Background**

Wright lives in Washington and applied for a job opening to work with Defendants. (Complaint ¶ 28.) She claims to have been "qualified to perform the position for which she applied." (Id. ¶ 29.) Wright alleges "[t]he posting for the job opening did not disclose the wage scale or salary range to be offered." (Id. ¶ 30.) She alleges that she and the members of a proposed class of similarly-situated individuals "lost valuable time applying for jobs with Defendants for which the wage scale or salary range was not disclosed." (Id. ¶ 37.) Wright further alleges that "[a]s a result of Defendants' refusal to disclose the wage scale or salary range in the job posting, Plaintiff remains unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts Plaintiff's current and lifetime wages." (Id. ¶ 19.) But Wright alleges only that she applied for the job; she does not allege that she received any specific response, such as an interview offer, nor did she spend time preparing for an interview.

Defendant removed Wright's case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a) and (d). (Dkt. No. 1 at 1–2.) Wright then timely moved to remand her case back to King County Superior Court, noting that her EPOA claim is "virtually identical to eight

1  others that were remanded for lack of Article III standing and subject matter jurisdiction." (Mot.
2  at 2.) In one such remand order, Judge Rothstein noted that the matter was "one of 27 lawsuits
3  with virtually identical [EPOA] complaints filed in King County Superior Court and
4  subsequently removed to this Court." Floyd v. Insight Glob. LLC, No. 23-CV-1680-BJR, 2024
5  WL 2133370, at *1 (W.D. Wash. May 10, 2024).

## ANALYSIS

### A.    Legal Standard

A defendant may remove an action filed in state court if the federal district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing federal jurisdiction by a preponderance of the evidence. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). Federal courts strictly construe the removal statute and must reject jurisdiction if there is any doubt as to the right of removal in the first instance. See Hawaii ex rel. Louie v. HSBC Bank Nev., N.A., 761 F.3d 1027, 1034 (9th Cir. 2014) (citing Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008)).

### B.    Plaintiff Lacks Standing

The Court finds that Wright lacks standing because she fails to identify a concrete injury-in-fact from Defendants' failure to provide statutorily-required salary information.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." Fed. Election Comm'n v. Cruz, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. See Warth v. Seldin, 422

U.S. 490, 498 (1975). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). Plaintiff bears the burden of establishing each of these elements "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" Id.; accord Tingley v. Ferguson, 47 F.4th 1055, 1066 (9th Cir. 2022).

This case falls into a category of lawsuits where standing is premised on the violation of a statutory right. "[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" Robins v. Spokeo, Inc. (Spokeo II), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting Spokeo, Inc. v. Robins (Spokeo I), 578 U.S. 330, 341 (2016) as revised (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" Id. (quoting Spokeo I, 578 U.S. at 340).

"Although we often think of 'tangible' injuries as the basis of this jurisdictional requirement, the Supreme Court has confirmed that 'intangible injuries can nevertheless be concrete.'" Magadia v. Wal-Mart Assocs., Inc., 999 F.3d 668, 679 (9th Cir. 2021) (quoting Spokeo I, 578 U.S. at 340). While "[t]he omission of statutorily required information can constitute a distinct, concrete injury," "not 'every minor inaccuracy reported in violation of [a

statute] will cause real harm or present any material risk of real harm.'" Id. (quoting Spokeo II, 867 F.3d at 1116). "[A]n intangible injury may be concrete if it presents a material risk of tangible harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law torts or certain constitutional violations." Phillips v. United States Customs & Border Prot., 74 F.4th 986, 991 (9th Cir. 2023) (quoting Spokeo I, 578 U.S. at 340-41).

"To determine whether the violation of a statute constitutes a concrete harm, we engage in a two-part inquiry." Magadia, 999 F.3d at 679. "We first consider 'whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights).'" Id. (quoting Spokeo II, 867 F.3d at 1113). "If so, we then assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" Id. (quoting Spokeo II, 867 F.3d at 1113).

Although the EPOA protects concrete interests of job applicants, the Court finds that the alleged violation Wright identifies did not cause an actual harm or present a material risk of harm to that interest. The Court reviews its two-part analysis, below.

First, the Court finds that the salary disclosure requirement in the EPOA was established to protect concrete, non-procedural rights for job applicants and employees. The EPOA was recently amended to address the wage gap and income disparities that exist affecting workers in Washington. RCW 49.58.005. The EPOA expressly states that "the legislature intends to require an employer to provide wage and salary information to applicants and employees." RCW 49.58.005(4). To promote this goal, the 2019 Amendments to the EPOA required employers to provide wage and salary information to applicants upon request, but only "after offering the applicant the position." RCW 49.58.005, -.100-.110. Then in 2022, the Legislature amended the

1  EPOA to increase transparency by requiring proactive disclosure of wage and salary information
2  to "allow[] a discussion at the start of the process instead of after an offer has been made, which
3  will increase the ability to negotiate pay." H.B. Rep. ESSB 5761, at 2. This change was designed
4  to avoid harm to those who "spend hours going through rounds of interviews only to find out
5  they can't live on the offered pay." S.B. Rep. ESSB 5761, at 3. Read together, this legislative
6  history confirms that the EPOA's procedural requirement of disclosure was established to protect
7  applicants by arming them with sufficient information to ensure fair and equitable pay
8  negotiations, and to avoid wasting time interviewing for positions whose pay would never be
9  adequate.
10         Second, Wright has failed to show how the lack of disclosure caused her the "real harm"
11 that the EPOA was "designed to prevent." Spokeo II, 867 F.3d at 1115. In full, Wright alleges
12 that because of the missing pay scale and wage range information, she "lost valuable time" and
13 was unable to "unable to evaluate the pay for the position and compare that pay to other
14 available positions in the marketplace, which negatively impacts [her] current and lifetime
15 wages," including her "ability to negotiate pay" in future positions. (Compl. ¶¶ 35–37.) But these
16 allegations fail to show any actual harm against which the EPOA intends to protect. Particularly,
17 Wright does not allege that she was offered an interview or that she engaged in any pay
18 negotiations. See, e.g., Partridge v. Heartland Express Inc. of Iowa, No. 3:24-CV-05486-DGE,
19 2024 WL 4164245, at *4 (W.D. Wash. Sept. 12, 2024) (remanding EPOA claim on standing
20 grounds after plaintiff failed to "allege that he was offered employment or interview."). All
21 Wright alleges is that she applied to a job with Defendant; her only identified injury is the time
22 she "lost" in applying. This is not an injury that the EPOA seeks to prevent or redress. Nor does
23 Wright's claims regarding her qualifications translate to claims that she was a "bona fide"
24

ORDER ON MOTION TO REMAND - 7

candidate who applied to the job with good-faith intent. See Liu v. Veeva Sys. Inc., No. 23-CV-1784-BJR, 2024 WL 4263176, at *3 (W.D. Wash. Sept. 23, 2024) ("An allegation of time wasted from going through the motion of applying for a job without good-faith intent is insufficient to satisfy Article III standing."). As was the case in Partridge, Liu, and a growing number of EPOA cases removed to this court, Wright's complaint does not contain a concrete and particularized injury sufficient to satisfy Article III standing. On this basis, the Court GRANTS the Motion and REMANDS this matter to King County Superior Court.

## CONCLUSION

The Court finds that Wright has failed to allege an injury to a concrete interest sufficient to satisfy Article III standing. The Court therefore lacks subject matter jurisdiction, and it may not preside over this matter. The Court REMANDS this matter to the King County Superior Court.

The clerk is ordered to provide copies of this order to all counsel.

Dated November 5, 2024.

Marsha J. Pechman
United States Senior District Judge